(No. 29064.—)

DOLLIE F. LEITCH *et al.,* Appellants, *vs.* WILLIAM A. HINE *et al.*—(CHICAGO JUNCTION RAILWAY Co. *et al.,* Appellees.)

*Opinion filed March 20, 1946*

212

JAMES J. BARBOUR, and EDWARD H. S. MARTIN, both of Chicago, for appellants.

WINSTON, STRAWN & SHAW, JAMES H. CARTWRIGHT, FRANK B. GILMER, SIDNEY C. MURRAY, MARVIN A. JERSILD, RICHARD O. OLSON, CHARLES J. FAULKNER, FREDERICK R. BAIRD, JOHN P. DOYLE, MARCUS WHITING WILLIAM N. STRACK, and NEAL J. HUFF, all of Chicago, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is a direct appeal from a decree entered in the circuit court of Cook county. Plaintiffs' second amended complaint was dismissed for failure to state a cause of action, and, plaintiffs electing to stand by their pleadings, the cause was dismissed at their costs. This appeal followed. Plaintiffs' complaint contained five counts. In the fifth they claimed an easement of indefinite duration across the property owned by a part of the defendants. Such claim involves a freehold which supports a direct appeal. *Liberty National Bank* v. *Lux,* 378 Ill. 329.

Plaintiffs owned a tract of land consisting of 3.1 acres, which is located in the packing house and industrial area at Thirty-ninth and Ashland streets, Chicago. In 1873, this tract, as a part of forty acres, was the subject of a

partition. A plat was filed in that proceeding upon which the tract now owned by plaintiffs was designated as lot 5. The following is a sketch of the pertinent parts of the plat:

The strip on the plat marked railroad right of way was, prior to 1890 and continuing to date in possession of defendants Chicago Junction Railway Company, The New York Central Railroad Company, The Chicago River & Indiana Railroad Company, or The Union Stock Yards & Transit Company. The several companies held in succession, but it is not necessary to identify their respective periods of ownership. Unless otherwise designated, the several companies will be referred to collectively as the railroad defendants. About 1890, plaintiffs' predecessors in title executed written leases with the railroad then using the right of way whereby lot 5 was leased for a period for a stipulated rental. The

last lease so executed expired April 30, 1916, but the railroad company then in possession and its successors continued in possession to April 30, 1934. The railroad defendants kept and maintained switch tracks on a part of lot 5 and used it for railroad purposes. All of the switches and other property were removed from the lot at the time possession was surrendered April 30, 1934.

The Anglo-American Provision Company, the Friedman Manufacturing Company, and Mechanical Manufacturing Company were, at the time this suit was started, interested as owners, lessees, or otherwise in lots 6, 7 and 8. The pleadings do not identify the respective interests of these defendants in said lots. The several companies will be referred to as the industrial defendants. The switch tracks of the railroad defendants located on lot 5 were used by the railroad defendants in furnishing switching service to the plants of the industrial defendants located on lots 6, 7 and 8.

The other defendants were William A. Hine and Frederick Hine. They owned lot 4. They had no right of possession or otherwise in lot 5, but from 1931-1934, they dumped vast amounts of refuse materials on plaintiffs' lot. It is alleged that it covered approximately two thirds of the lot and in places was more than 20 feet deep. At its inception this suit had as it primary object the enjoining of the Hines from committing further trespasses on lot 5. On June 15, 1934, a decree was entered which permanently enjoined them from the dumping of further refuse on the lot. It also contained a mandatory provision which directed that, by December 14, 1934, they remove all the substance deposited by them. No appeal was taken from such decree.

The record does not disclose when the suit was started nor the date the original and first amended complaints were filed. The second amended complaint was filed December 21, 1935. Plaintiffs' purpose, as disclosed by this latter

pleading, was to recover damages for the dumping of the refuse on lot 5, for injunctional relief enjoining further trespasses and for other purposes as hereinafter noted. After plaintiffs filed a praecipe for record, on appeal, defendants filed a praecipe for additional record. It appears from such additional record that the Hines did not remove the refuse within the time specified in the decree. By an order entered March 10, 1937, it appears that evidence was heard from which the court found that the Hines had removed "approximately all the debris" and had purged the contempt found by order of February 15, 1935. Evidently the refuse was on the lot when the second amended complaint was filed but plaintiffs did not make any amendments to meet the new condition created by the order finding it had approximately all been removed. The motions to dismiss were not filed until 1943 and the fact of removal of refuse was not properly pleaded by defendant, so consideration of the case must be limited to the facts pleaded in the second amended complaint and the motions to dismiss. Although the Hines were named as defendants, they did not appear to answer the charges in the complaint.

Plaintiffs' theory of the liability of defendants-appellees as stated in the first count was that both groups of defendants, railroad and industrial, were liable for the trespasses of the Hines. Plaintiffs claimed they would be forced to incur heavy expense in the removal of the refuse and in the procurement of a place to deposit it. The count contained an allegation that "all of the other of said defendants were in possession of said premises" (lot 5) during the Hines' trespasses. It was also alleged that the railroad defendants and the other defendants had full knowledge of the dumping of said materials on lot 5, and that the said defendants failed to exercise ordinary and reasonable care in the protection of plaintiffs' property, particularly with reference to such dumping, and that they failed to

notify plaintiffs of the trespasses of the Hines. It is further stated "that for said wilful and wanton acts of the said defendants, William A. Hine and Frederick Hine, all of the defendants are liable to the plaintiffs." These allegations demonstrate that plaintiffs' theory of liability was that the railroad and industrial defendants were in possession of the lot when the trespasses were committed and that by reason of such possession a duty involved upon them to protect plaintiffs' property and to give plaintiffs notice of such unlawful acts. It is not necessary to go into the possibilities that the industrial defendants might be liable if they were in possession for it would be to assume something which the facts pleaded do not support. There are no facts stated to show the industrial defendants were in possession during the dumping of refuse by the Hines. The only reference is the general allegation "that all of the other of said defendants were in possession." Undoubtedly this was broad enough to include the industrial defendants, but other allegations of fact show they were not in possession, that their industrial plants were located on lots 6, 7 and 8, and that they had no interest in lot 5. Such an allegation is a conclusion of the pleader (*Grove* v. *Templin*, 320 Ill. 597,) which the motion to strike does not admit to be true. The court was correct in holding that no cause of action was stated in count 1 against the industrial defendants.

The railroad defendants pleaded a different defense. The Union Stock Yard & Transit Company, The Chicago Junction Railway Company, and The New York Central Railroad Company joined in a motion in which they pleaded that the cause in count 1 was barred by a former judgment. The Chicago River & Indiana Railroad Company filed a separate motion, in which the same defense was interposed. Such defense did not appear on the face of the pleading so that movants in each case supplied facts

in support by attaching affidavits. The difference in the facts stated and the relationship of the respective movants make it necessary to consider the two motions separately.

Plaintiffs contend that the motions of the railroad defendants are, since they present facts, in effect answers which should have gone to a hearing of evidence. Each motion questioned the sufficiency of count 1 for defects appearing on the face. Each motion also pleaded a former judgment in bar. This did not appear on the face of the complaint, so defendants showed facts to support it by affidavit attached to the motion. Plaintiffs' attack on the motion is an attempted application of the rule which prevailed in equity prior to the effective date of the Civil Practice Act, that is, that the filing of a demurrer and answer to a bill at the same time was in effect an answer and that the answer waived the demurrer. They also contend that a defect which appears on the face of the pleading cannot be included in a motion with a defense which does not appear on the face.

Defendants' motions were filed pursuant to section 48 of the Civil Practice Act. (Ill. Rev. Stat. 1945, chap. 110, par. 172.) Section 48 is supplementary to section 45 and amplifies it. Section 48 was patterned from the New York Rules of Civil Practice. The section is explicit in that it authorizes raising questions by motion under two different situations. Defects which appear on the face of the opposite party's pleading may be raised by motion. If any one of the nine defenses specified in the section are available, then a party may raise it by motion and supply facts to sustain such defense by affidavits. Issues of fact may be raised by the filing of counteraffidavits. Provision is made for a hearing on such contested questions.

In *Koerner* v. *Apple*, 199 N. Y. S. 171, the court in construing the rule from which the substance of section 48 was taken said: "By the present practice a defendant may present the facts constituting this defense by affidavit be-

fore answering, and where the facts are not controverted by the plaintiff's affidavits the sufficiency of the defense may be disposed of as a matter of law." To the same effect is *Herzog* v. *Brown*, 216 N. Y. S. 134.

Plaintiffs did not file counteraffidavits, so the facts stated in the affidavits attached to defendants' motion should be taken as true. This permitted the court to dispose of the case on the defense of a former judgment. The procedure followed was authorized by statute, and the inclusion in the motion of a defect appearing on the face of the pleading with a defense in bar supported by affidavit did not operate to waive the one and give the other the effect of an answer to the merits. We do not perceive any reason why both objections might not be incorporated in a single motion. When so included, each retains its identity and purpose and, subject to the discretion of the court, one may be determined without conflict with the other and without prejudice to any rights. Plaintiffs' contention is without merit.

The affidavit filed in support of the motion of the three railroad defendants shows that these plaintiffs started a suit in the superior court of Cook county on April 17, 1934, against the four railroad defendants. It stated that it was to recover damages for the use and occupation of lot 5 and for rent in connection with the alleged use, on plaintiffs' theory that the railroads were their tenants. It appears that the railroad defendants had used or occupied the lot during the five-year period next preceding the commencement of the action. The contents of the pleadings of the former action are not shown but from the judgment set forth in the affidavit, it appears that there was a trial by jury on the issue as to what was the fair reasonable rental for the five-year period, 1929-1934. The jury fixed it at $29,000 and the court in disposing of the legal questions involved found that none of the railroad defendants had been in possession during the five-year period except

The Chicago River & Indiana Railroad Company. The judgment for the amount of the verdict was entered against said railroad company, hereinafter called the Chicago River Road. In the former action, a judgment was entered in bar as to all the railroad defendants except the Chicago River Road. The judgment pleaded shows that the issue was as to which of the railroads was in possession of lot 5, and the finding that none, except the Chicago River Road, had been in possession of lot 5 from April 17, 1929, to April 17, 1934, would be conclusive between the same parties in this action.

It is necessary to note the distinction that is often made between a judgment as a bar to a cause of action and an estoppel as to a particular fact. A cause of action which has been finally determined is conclusive as to all immediate parties to that suit and all persons in privity with them. (*Little* v. *Blue Goose Motor Coach Co.* 346 Ill. 266.) Such bar extends not only to the questions actually decided but to all grounds of recovery and defenses which might have been presented in the litigation of the particular action. (*Boddiker* v. *McPartlin,* 379 Ill. 567; *Winkelman* v. *Winkelman,* 310 Ill. 568.) Where such former adjudication is relied on as a bar to a subsequent action, it must appear that the cause of action and the parties are the same in both proceedings. (*Harding Co.* v. *Harding,* 352 Ill. 417.) However, in cases where the second action between the same parties is upon a different claim or demand but some fact or question material to the second case has been determined in the prior action, such former adjudication of that question or fact is conclusive in the second suit. *Harding Co.* v. *Harding,* 352 Ill. 417; *Cromwell* v. *Sac County,* 94 U. S. 195; 24 L. ed. 351.

We conclude that when the facts of the former action as shown by the affidavit are considered with the facts pleaded in count 1, the causes of action are different. However, the fact of possession of lot 5 by the defendants

was an essential factor in each cause of action. In the former action it was determined that none of the railroad defendants, except the Chicago River Road, was in possession of lot 5 in 1929-1934. That determination is conclusive as to the cause of action pleaded against the three railroads in count 1.

The motion and affidavit of The Chicago River & Indiana Railroad Company discloses many of the facts set forth in the motion and affidavit of the other three railroad defendants but in addition the following facts appear: The Chicago River Road admitted in the former action that it was in possession of a 34-foot strip on lot 5, which it had used since 1922, but denied that it was in possession of said strip or any part of said lot by virtue of a lease with plaintiffs. It is stated in the affidavit in this case that its possession was that of a trespasser. The judgment found that the Chicago River Road owed plaintiffs $29,000 as "a fair and reasonable cash rental value for the period 1929-1934." The judgment refers to the whole of lot 5, so the court must have found against said defendant's contention that its possession was limited to a 34-foot strip. However, it appears that an issue in the prior litigation was as to whether said defendant was in possession under a lease, which would make it liable for the rentals specified therein, or in possession under other conditions. The judgment entered indicates that the measure of damages was determined on the basis of a fair, reasonable rental rather than an amount fixed by lease, and from this it must be taken as settled that the court determined that there was no leasing arrangement whereby the Chicago River Road was in possession 1929-1934 under a written lease. There are no facts to show that the Chicago River Road had anything to do with the dumping of the refuse by the Hines. If it was in possession as a trespasser as was contended in the former action, then the pleading fails to show facts that would make it a joint tort feasor with

the Hines. There is an allegation in count 1 which charges the defendants did not leave the lot at the expiration of the lease in as good condition as when entered upon. In a lease dated 1916, to run for one year, which was the last one executed, there was a covenant which required the railroad company to leave the lot in as good condition as when entered upon, but, as noted, the former suit determined the fact that the Chicago River Road was not in possession under a lease. Such finding is conclusive here and any liability claimed against the Chicago River Road by reason of the breach of a lease is barred by the finding in the former action. The court properly sustained the motions of all defendants to count 1.

Count 2 realleges all the paragraphs of count 1, except the one which refers to damages. The paragraph which includes the prayer is the only one added. The prayer is that a mandatory injunction issue against "any of the other defendants who may have permitted" the dumping of refuse by the Hines, and asks that they be commanded to remove such refuse and to restore the lot to the condition it was in before the trespass was committed. As previously observed, none of the industrial defendants or railroad defendants, except the Chicago River Road, were in possession of the lot during the time when the refuse was deposited. Since they had nothing to do with the trespasses of the Hines and were not liable to plaintiffs for the damages committed by the Hines, there could not be any basis for a mandatory injunction. The facts have been sufficiently detailed to show that as to the Chicago River Road there is no factual basis for injunctional relief against it.

Count 3 adopted seven of the seventeen paragraphs of count 1 and added four more. The substance of the count thus pleaded was that on three different occasions some one of the railroad defendants had filed petitions to condemn all or some parts of lot 5. It appears that plaintiffs

resisted such petitions and all were dismissed without a judgment of condemnation. The last to be started was filed in 1918 and dismissed in May, 1934. In connection with the latter petition, the railroad company caused an injunction to issue enjoining plaintiffs from interfering with the condemnation action or interfering with the petitioner's possession. The prayer is that defendants be enjoined from entering upon lot 5, and that the railroad defendants be enjoined from instituting another condemnation action. Without deciding whether an injunction should issue for the purposes stated, if there were threatened trespasses or prospects of another suit being filed, it is sufficient to note that the count does not contain an allegation that any of the defendants are about to commit either act. The industrial defendants were never in possession and when the railroad company that was last in possession withdrew, it took its tracks and equipment with it. That was in April, 1934, and the long lapse of time since with no threatened re-entry would indicate there was no basis for an injunction.

The fourth count adopts the background of facts as alleged in count 1 and realleges all the paragraphs of that count but two. Three new paragraphs are added. The substance is that the west fork of the south branch of the Chicago River is navigable opposite plaintiffs' property and continues so to its outlet with other channels of the Chicago River. It is alleged defendants are threatening to deposit materials in the river, particularly that deposited on lot 5 by the Hines. It is stated as a fact, that the Hines have already deposited some of the material in the river. Plaintiffs claim the depositing of such material in the river, it being a navigable stream, would cause irreparable damage to their riparian rights and they pray that defendants be enjoined from committing such acts. This count, like the preceding ones, contains no allegations of fact implicating either the industrial defendants or the rail-

road defendants with the refuse deposited on lot 5 and no facts are pleaded to show that any of the defendants are about to take the refuse from lot 5 and deposit it in the river.

The prayer of count 5 was that it be established by decree that a permanent roadway, not less than 33 feet in width, extends from lot 5 north to Thirty-ninth street; that defendants be enjoined from further obstructing such roadway, and be compelled to remove from it the obstructions which they had placed thereon. In further identification of the location of the roadway it is said that it is "as set forth in red ink on said Exhibit 'B' leading to and from said lot 5 along the east side of said lots 6, 7 and 8."

The facts pleaded to support the prayer of count 5 are that on and prior to April 16, 1868, one Elizabeth Wilder owned the quarter-quarter section of which lot 5 is a part; that she died intestate on said date and that in 1873 the heirs-at-law of said deceased caused the said 40-acre tract to be partitioned. The allegation in reference to the partition action is that the heirs-at-law "did institute partition proceedings in the circuit court of Cook county * * * filed April 7, 1873 entitled—Robert Leitch et al v. Hiram L. Wilder et al, and in said proceedings said Circuit Court Partition was established and a division made of said quarter quarter section." A plat from which the foregoing plat is taken was attached and made a part of count 5 as exhibit "B." The names or number of the heirs-at-law who owned an interest in the forty acres are not shown, nor does it appear in whom the title to the various lots shown on the plat was vested. It does not appear whether the partition that was established and the division made was by sale or by vesting of title in severalty by decree.

Another allegation made in part on information and belief, and in part on actual knowledge is "that there has existed for a period of greater than sixty years last past a well defined roadway extending from what is now said

lot 5 directly north from the east side thereof to the street now known as 39th street, and that said roadway ran over the easterly portion of what is now lots 6, 7 and 8 in said Circuit Court Partition * * * that at present there exists a well defined roadway along said east portion of said lots 6, 7 and 8 leading from lot 5 to 39th street; that the easterly line of said lots 6, 7 and 8 is the quarter section line forming the eastern boundary of said quarter section."

It is alleged that immediately after the railroad defendants surrendered possession of lot 5 and removed their tracks, they constructed a track leading from their main track in a northwesterly direction across the driveway to service the business and plants of the industrial defendants located on lots 6, 7 and 8; that in constructing the switch track across the roadway the railroad defendants depressed the rails and ties below the level of the surface and that such condition obstructs the roadway. It is also alleged that some of the defendants have set steel posts across the driveway.

It is not claimed that the roadway was created by prescription or that it was a subject of transfer by written instrument. Plaintiffs claim an easement by implication, first, on the theory that unity of title was followed by severance of ownership under circumstances which implied the transfer to the grantee of a right of ingress and egress from lot 5 to Thirty-ninth street, and second, an easement by necessity. The question is as to whether count 5 contained allegations of facts sufficient to establish an easement by either one of plaintiffs' theories.

First, as to an easement implied upon a severance of ownership of the larger tract of which lot 5 was a part, it is well settled that where an owner of a tract of land or of two or more adjoining parcels uses it so that a part derives an advantage from the other part, which benefit or advantage appears to be of a continuous and permanent

nature, and then such owner sells the part in favor of which the use is made, the purchaser, in addition to the title conveyed, receives the advantage or benefit by implication. If the part conveyed is burdened with an advantage or use for the benefit of another part, then the purchaser of the part so conveyed takes title subject to the burden by implication. *Walters* v. *Gadde*, 390 Ill. 518; *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270; *Fels* v. *Arends*, 328 Ill. 38.

The essentials of an easement by implication on severance of unity of ownership are well defined in the cases. In considering such essentials in *Fossum* v. *Stark*, 302 Ill. 99, the court quoted with approval from 9 R.C.L. 757, as follows: " 'Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership of an estate: First, a separation of the title; second, that before the separation takes place, the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these another essential is sometimes added,—that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time.' * * * It is further stated that all the authorities are agreed that such a right 'is confined to cases of servitudes of a permanent nature, notorious or plainly visible, from the character of which it may be presumed that the owner was desirous of their preservation as servitudes, evidently necessary to the convenient enjoyment of the property to which they belong and not for the purposes of mere pleasure.' " 17 Am. Jur. 948.

The ownership of the 40-acre tract by Elizabeth Wilder, or after her death by her heirs-at-law, was a unity of ownership so that if Elizabeth Wilder, or after her death

her heirs-at-law, had burdened one part of the 40 acres to the advantage or benefit of another, a conveyance of the part so benefited would carry such benefit by implication. Defendants contend that the facts pleaded in count 5 do not show that the ownership of lot 5 was severed from the other lots. It is fundamental that a transfer of the benefit or advantage (in this case the roadway) could only be made by implication in connection with a conveyance or transfer of the dominant estate. The reasoning upon which an easement is created by implication upon severance of ownership is that it is presumed that the owner intended to convey the property and rights so that the purchaser could have full use of the property. The facts pleaded show plaintiffs own lot 5 and that some one or more of the defendants own or have a possessory right in lots 6, 7 and 8, that the Hines own lot 4 and one of the railroad defendants is in possession of the railroad right of way abutting on lot 5. It also appears that the 40-acre tract was divided into lots in 1873 in a partition action among the heirs-at-law of Elizabeth Wilder. But, as stated, there is no allegation as to the division that was made in the partition action. If lots 6, 7 and 8, and lot 5 were vested by decree in one owner then there was no occasion to imply the transfer of a driveway from lot 5 to Thirty-ninth street across the east end of lots 6, 7 and 8.

We adopt the rule of other jurisdictions that a severance by judicial partition will support a transfer of an easement by implication if all the other essentials are present, (Annotations 34 A. L. R. 246, supplemented 100 A. L. R. 1329,) and if it appeared in this pleading that the result of the partition action was to sever the ownership of lot 5 from the part over which it is now claimed the burden of a roadway existed, then as to the question of severance, the pleading would be sustained. Since the pleading is insufficient as to the essential of severance of

ownership, it is not necessary to determine whether the other essentials of an easement by implication on severance of ownership are sufficiently pleaded.

Plaintiffs' claim that the facts pleaded show the right to a roadway by necessity is also questioned by defendants. An easement by necessity is dependent upon unity of ownership and that there has been a severance of ownership as to a part of the tract. So long as there is no severance there is no necessity of a way. What has been said as to the insufficiency of the allegations to show a severance of ownership applies to roadways by necessity. The two characters of easement differ as to some of the other elements essential to create an easement but, as to the necessity of there being a unity of ownership and a severance of it, they are the same. The count does not contain facts showing there was a severance of the unity of ownership. The court did not err in sustaining the motion to dismiss. Other questions have been argued but it is not necessary to consider them.

The decree is affirmed.

*Decree affirmed.*