FIRST BANK AND TRUST COMPANY, f/k/a Bank of Johnston City, Plaintiff and Counterdefendant-Appellee, v. LARRY TIMMONS et al., Defendants and Counterplaintiffs-Appellants.

Fifth District   No. 5—89—0159

Opinion filed February 27, 1991.

Thomas F. Crosby, of Winters, Brewster, Murphy, Crosby & Patchett, of Marion, for appellants.

Michael F. Dahlen, of Feirich/Schoen/Mager/Green, of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

This case is on appeal pursuant to a finding under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) following the trial court's dismissal of Larry and Virginia Timmons' counterclaim against the First Bank and Trust Company (formerly known as the Bank of Johnston City and hereinafter referred to as Bank). The Bank filed a complaint to accelerate and enforce payment of the Timmonses' home loan. The

Timmonses filed a three-count counterclaim in which the following theories of recovery were pled: count I charged the Bank with failure to procure disability insurance on the Timmonses' mortgage loan; count II claimed that the Bank breached the covenant of good faith and fair dealing implied into the mortgage contract when it refused to allow the Timmonses to repair their home with fire insurance proceeds; and count III claimed that the Bank's breach set forth in count II was committed willfully and wantonly. The trial court dismissed all three counts with prejudice based upon its finding that they were barred under the doctrine of *res judicata*. We affirm as to count I and reverse as to counts II and III.

Since the trial court dismissed the counterclaim on *res judicata* grounds, some discussion of the earlier litigation between these parties is necessary in order to understand the issue before the court on this appeal. The factual background was set forth in the earlier unpublished order in the consolidated cases of *Timmons v. Bank of Johnston City*, Williamson County No. 85—L—72, and *First Bank & Trust Co. v. Timmons*, Williamson County No. 87—L—95, which was filed on July 12, 1988, in cause No. 5—85—0843. (*Timmons v. Bank of Johnston City* (1988), 171 Ill. App. 3d 1168, 543 N.E.2d 626 (unpublished Rule 23 order).) We will incorporate portions of that order with slight modifications to reflect the parties' positions in this case.

Larry and Virginia Timmons contracted to buy a house near Johnston City, Illinois, during the summer of 1979. In August 1979, they went to the office of Michael J. Bowling, executive vice-president of the defendant Bank of Johnston City (the Bank), to apply for an installment home loan. The Timmonses already had a loan with the Bank dating from 1976 when they purchased a 40-acre farm in the area. The new loan involved the trading of their farm plus a mortgage of $60,000.

Larry Timmons had a history of back problems commencing with an injury in 1968 while in the service. Over the course of 11 years prior to applying for the second loan with the Bank, Larry had reinjured his back numerous times and had undergone two disc surgeries. When the Timmonses applied for their first loan with the Bank in 1976, Larry was on disability. Because of Larry's history of back problems, the Bank informed him that he would have to take out disability insurance on the new loan. He agreed to do so and filled out the necessary papers supplied by the Bank. The Timmonses testified they were told that if Larry were to become disabled again, the insurance company would make their monthly payments for as long as he was disabled or until the loan was paid off. In reality, the disability

portion of the policy was limited to a two-year indemnity period.

The insurance company, National Fidelity Life, requested Larry to undergo a medical exam. On the medical report sent to the company, Larry stated he had had back surgery but was completely recovered. The company agreed to insure the Timmonses but excluded any coverage relating to Larry's back problems. The Timmonses agreed to this condition.

On September 26, 1979, Larry was injured at work when a 40-pound coffee urn fell on his neck. This injury precipitated his current disability to the extent that Larry was no longer able to work. The Timmonses filed a claim with the insurance company to cover their mortgage payments. The company made the monthly payments to the Bank for two years, the maximum indemnity period under the policy, for a total of $14,863.68. During this same two-year period, the house burned because of an electrical problem while the Timmonses were out of town. As a result of the fire, Larry and Virginia Timmons were no longer able to live in the house. When the disability payments ceased, the Timmonses could not make any further payments on the loan. Consequently, the Bank instituted foreclosure proceedings. The Timmonses, in the meantime, filed a claim against the Bank (and certain of its employees) and the insurance company for failing to procure and issue a disability policy with a 20-year indemnity period (the life of the loan). The outstanding mortgage balance was then $78,429.10.

The Timmonses settled with the insurance company for $4,500 and proceeded to trial against the Bank. The jury found in their favor on the Bank's failure to procure a 20-year indemnity insurance policy, and the circuit court of Williamson County awarded the Timmonses $78,465.06.

This court reduced and modified the lump-sum nature of the judgment in the earlier litigation, but affirmed the jury's determination of liability on the part of the Bank. In doing so we stated:

> "The Timmons[es] testified they were told in the event of disability, the insurance policy would cover the loan payments until either Larry returned to work or the loan was paid in full. The insurance application itself contained no reference to any limit to the indemnity period. While both the policy and an outline of coverage made reference to the two-year limitation, neither were [*sic*] even received by the Bank until February 1980, long after the onset of Larry's disability. What is at stake here is a contract to *procure* insurance. Therefore, what the parties believed and what their intents were at the time of entering

the contract, the negotiation stage, is crucial. Clearly the evidence presented an issue of credibility on the matter which the jury obviously resolved in plaintiff's favor." (Emphasis in original.) *Timmons v. Bank of Johnston City,* unpublished Rule 23 order at 6.

■ Turning to the counterclaim in this appeal, the record reveals that count I alleges:

"4. Defendant failed to procure said insurance policy and as a result of this breach of contract occurred [*sic*] to procure said policy Counterplaintiffs were unable to pay the installments as they became due under the attached promissory note.

5. As a consequence of Defendant's failure to procure insurance in [*sic*] the concomitant inability of Plaintiffs to satisfy the obligations of said note and mortgage, Defendant wrongfully ordered Plaintiffs to relinquish possession of the property on June 15, 1982."

These charges obviously represent the identical theory and claim that was pursued in the earlier case and the trial court was correct in dismissing count I under the doctrine of *res judicata.*

However, counts II and III of the counterclaim have nothing to do with the original claim based on the Bank's failure to procure disability insurance. The latter two counts are based upon the Bank's allegedly improper appropriation of proceeds from a fire insurance policy that covered the Timmonses' home. Count II alleges:

"6. That on May 26, 1981, a fire occurred at the home of Larry and Virginia Timmons, which premises were mortgaged to secure the promissory note executed by the Timmons to the Bank of Johnston City.

7. That at the time of said loss and partial destruction of the dwelling, the Plaintiffs had a fire insurance policy with Economy Fire & Casualty Company, Policy No. 4812—093287, upon which they made a claim for insurance proceeds to rebuild the damaged dwelling.

8. On or about January 6, 1982, Economy Fire & Casualty Company tendered a settlement check in the amount of Twenty-three Thousand Five Hundred Thirteen Dollars ($23,513.00) to the Larry and Virginia Timmons and the Bank of Johnston City as named mortgagee.

9. Larry Timmons requested the Bank of Johnston City to endorse the insurance draft so that he could use the proceeds to rebuild the dwelling which had been partially destroyed by fire. The Bank of Johnston City by and through its officers

refused to endorse said check and insisted that Larry and Virginia Timmons endorse the check and allow the Bank of Johnston City to apply the insurance proceeds to the outstanding balance of the promissory note.

10. The Plaintiffs refused to endorse the check because the proceeds would not be used to refurbish and repair the burnt out dwelling.

11. Because of the refusal of the Bank of Johnston City to allow the Plaintiffs to use the insurance proceeds to repair the dwelling, the Plaintiffs were unable to repair their dwelling.

12. Implied in all contracts, including the mortgage agreement attached hereto, is an implied covenant of good faith and fair dealing.

13. The dwelling, as security, was not impaired by the fire, and could have been repaired to its prior state if the insurance proceeds had been applied to repair the premises.

14. That the refusal of the Bank of Johnston City to tender the insurance proceeds for purposes of repair of the dwelling breached the implied covenant of good faith and fair dealing implied in law into said mortgage agreement.

15. As a consequence of the breach of the covenant of good faith and fair dealing, the Plaintiffs were constructively evicted from their dwelling, suffered public humiliation and said dwelling suffered waste above and beyond that caused by the fire damage which will require expenditure of amounts above that of the insurance proceeds to repair."

Count III is a repetition of count II accompanied by charges that the Bank's conduct was willful and wanton.

■ In order for the prior suit to be a complete bar to counts II and III under the doctrine of *res judicata*, there must be an identity of parties, subject matter, and of cause of action. (*Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 394 N.E.2d 746.) While the elements of the rule may be succinctly stated, it has been accurately noted that, "The rule, unfortunately, is more easily stated than applied; the difficulty is determining what constitutes a single 'claim, demand, or cause of action.' " *Kirk v. Board of Education of Beemer Community High School District, No. 228* (7th Cir. 1987), 811 F.2d 347, 352.

■ The Bank argues that both claims asserted by the Timmonses have their origin in the original mortgage agreement and that therefore the counterclaim was properly dismissed on *res judicata* grounds. While the Bank's contention about the origin of the claims may be generally accurate, the legal result that they wish to achieve from

that origin is not appropriate in this case. The mortgage agreement gave rise to two separate insurance policies. The Timmonses' first claim was based upon the Bank's failure to procure the disability insurance. The Timmonses' present counterclaim, however, is based upon the Bank's alleged wrongful appropriation of fire insurance proceeds. While the background existence of the mortgage may be an essential fact in each claim, it is far from the controlling factor in either claim.

The essential evidence in the first suit dealt with the activities and/or representations of the Bank and the Timmonses with regard to the disability policy. The essential evidence in the present suit will revolve around the activities of the parties with regard to the fire insurance proceeds. Without specifically deciding whether there is a significant difference between a "core of operative facts test," or an "essential evidence" test (*Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 484 N.E.2d 1187), it is clear that the Timmonses' counterclaim involves a different cause of action than did their original suit. *La Grange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496.

■ The Bank also contends that evidence regarding the fire insurance policy proceeds was introduced in the original suit. We note that the record of the original case reveals that this evidence was first elicited by the Bank. Counsel for the Timmonses in the first case made no reference to the proceeds in his opening statement, and it was first brought out by counsel for the Bank during the cross-examination of Virginia Timmons. In addition, neither the issues instruction nor the damage instruction in the first suit made any reference to the fire insurance proceeds. Under these circumstances we do not think that the incidental references to the fire insurance proceeds suggest any attempt upon the Timmonses' part to assert any such claim in the original suit.

Finally, the Bank contends that the trial court should be affirmed because the Bank acted properly under the law in applying the insurance proceeds toward the mortgage debt. This was not the basis of the trial court's ruling, and our review of the record suggests that the issue was not adequately presented to the trial judge. Therefore, we make no ruling on this issue, but reverse and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

RARICK, P.J., and WELCH, J., concur.