In the Matter of Lamar CHAPMAN III and Vanessa M. Chapman, Debtors.

Bankruptcy No. 90 B 14910.

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 10, 1991.

---

See also 132 B.R. 153.

Richard J. Lipschultz, Chicago, Ill., for debtors.

Steven R. Rappin, Hauselman & Rappin, Ltd., Chicago, Ill., for Citicorp Mortg., Inc.

MEMORANDUM OPINION ON CITI-CORP'S MOTION FOR SUMMARY JUDGMENT ON DEBTORS' DE-FENSES AND COUNTERCLAIM TO ITS CLAIM

JACK B. SCHMETTERER, Bankruptcy Judge.

The debtor-defendants Lamar and Vanessa M. Chapman ("Debtors") filed their pending proceeding under Chapter 13 of the Bankruptcy Code, Title 11 U.S.C. Prior to that filing, they had mortgaged their home to Citicorp Savings of Illinois ("Citicorp") to secure a loan. Citicorp filed a foreclosure action in state court and obtained judgment. The bankruptcy filing followed.

Citicorp filed a secured claim herein in the amount of $112,744.77 based upon its state court judgment.

Debtors object to that claim by pleading an affirmative defense and a counterclaim. Debtors claim they are entitled to reinstate their mortgage and receive damages due to Citicorp's assertedly improper conduct, and contend that Citicorp is not entitled to any claim against them. Citicorp has moved for summary judgment on Debtors' objections based upon principles of res judicata and the record of state court proceedings. For reasons set forth herein, the motion is granted in part and denied in part.

■ Apart from moving papers and briefs, the parties filed exhibits accompanied by affidavits. From those papers the following undisputed facts appear.[1]

## I. UNDISPUTED FACTS

Debtors executed a mortgage and $50,-700.00 promissory note (collectively referred to as "Mortgage") with First Federal Savings and Loan Association of Chicago on August 15, 1978. First Federal eventually merged into and was succeeded by Citicorp Savings of Illinois. The promisso-

---

1. Local District Rule 12(1) adopted as a rule in bankruptcy requires the moving party to serve with each motion for summary judgment a statement of facts as to which that party contends there is no genuine issue, with references to supporting portions of the record. Failure to comply may result in denial of movant's motion. Local Rule 12(m) requires a party opposing a Rule 56 motion to file a concise response to the movant's statement in numbered paragraph form. Failure to deny a fact set forth in the 12(1) statement is an admission of that uncontroverted fact.

Citicorp's 12(1) statement was contained in its brief. In response, Debtors filed a document entitled "Statement of Material Facts as to Which There is no Dispute," which constitutes their 12(m) statement. Debtors' Statement is neither concise nor responsive nor is it presented in numbered paragraph form. Rather, the Statement consists of undocumented assertions of fact and unsupported conclusions of law. The Court further notes that the Statement mirrors pages 1 through 11 of Debtors' memorandum opposing Citicorp's motion. Consequently, the purpose of this document is unclear. The net result under Rule 12 is that Citicorp's statement of facts stands admitted, that of Debtors' is unsupported.

ry note provided for interest at the rate of 7.90% per annum on the principal balance, payable in monthly installments of $372.00, commencing on October 1, 1978. The Mortgage was properly recorded on August 25, 1978.

### A. State Court Proceedings

Debtors fell behind in their Mortgage payments. On October 29, 1985, Citicorp commenced a foreclosure action against Debtors in the Circuit Court of Cook County, Illinois ("First Foreclosure Complaint"). The Honorable George A. Higgins presided. On February 6, 1986, Citicorp provided Debtors a statement of the amount necessary to reinstate or bring current the delinquent Mortgage. It required Debtors to pay $6,517.71 by cashier's check on or before February 28, 1986, and if paid, Citicorp agreed to dismiss the case. Debtors failed to comply. The State Court entered a Judgment of Foreclosure and Sale on behalf of Citicorp on March 20, 1986 ("First Foreclosure Order").

On April 21, 1986, Debtors tendered the amount owed and Citicorp caused the First Foreclosure Order to be vacated and the case dismissed. The April 23, 1986, order vacating the judgment provided in pertinent part that the Debtors had

> "... heretofore reinstated all defaults in the payment of said mortgage, pursuant to Illinois Revised Statutes [1985], Chapter 95, Section 57."

("April 1986 Order").

Debtors again fell behind in their mortgage payments. Citicorp filed a new Complaint for Foreclosure of Mortgage on November 6, 1986 in the Circuit Court of Cook County, Illinois ("Second Foreclosure Complaint"). In their Answer to that Complaint, Debtors admitted all allegations, except paragraph P, wherein a receiver was requested. Also, no denial was made of paragraph Q which alleged Debtors had reinstated a previous default pursuant to Illinois Revised Statutes 1985, Chapter 95, § 57 ("Mortgage Act").

Debtors asked Citicorp to provide a statement of all amounts due for the purpose of paying them and reinstating the Mortgage. On February 26, 1986, Citicorp responded that Debtors had no right to reinstatement under the Mortgage Act more than once in a span of five years. Accordingly, Citicorp refused to provide Debtors the requested figures. The letter stated in pertinent part:

> Please be advised that Citicorp Savings of Illinois will not provide you with reinstatement figures in connection with the pending mortgage foreclosure action, since you previously have reinstated your delinquent mortgage. Under Illinois Revised Statutes [1985], Chapter 95, Section 57, a Mortgagor only has one right to reinstate within a five year period, and your right has now been utilized and is not again available to you.

Almost one year later (February 6, 1987), Citicorp filed a motion for summary judgment in the foreclosure case. After extensive briefing, the trial court entered an order on April 20, 1987, granting Citicorp's motion and entered judgment of foreclosure and sale ("Second Foreclosure Order"). Thirty days later (May 20, 1987), Debtors moved to vacate the Second Foreclosure Order, and reinstate the Mortgage. Debtors claimed the earlier reinstatement was pursuant to Paragraphs 12 and 19 of the Mortgage and not, as the April 1986 Order shows, the Mortgage Act. Paragraphs 12 and 19 of Mortgage, respectively, provide in pertinent part:

> Remedies Cumulative. All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively ...

("Paragraph 12").

> Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage, the Note and Notes Securing Future Advances, if any, had no acceleration occurred; (b) Borrower

cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in Paragraph 18 hereof, including, but not limited to reasonable attorney's fees; and (d) Borrower takes such actions as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligation secured hereby shall remain in full force and effect as if no acceleration had occurred. . . .

("Paragraph 19").

Eight days later (May 28, 1987), Debtors filed a pro se petition before Judge Robert L. Sklodowski, the successor judge to Judge Higgins, asking the trial court to amend the prior April 1986 Order entered by Judge Higgins. Judge Sklodowski denied the motion on that date. The written order does not state the reasons for Judge Sklodowski's ruling.

On June 1, 1987, Debtors' motion to vacate the Second Foreclosure Order was continued to June 30, 1987. In the meantime, on June 26, 1987, Debtors filed an emergency petition pursuant to § 2–1401 of the Code of Civil Procedure [Illinois Revised Statute Ch. 110, ¶ 2–1401]. Debtors again requested the trial court to amend the April 1986 Order, a request which had previously been denied. Debtors reiterated that Paragraph 19 of the Mortgage provided a right to reinstate the Mortgage in addition to the right afforded by the Mortgage Act.

On June 29, 1987, Judge Sklodowski entered an order amending the April 1986 Order nunc pro tunc. The first two paragraphs are essentially unchanged. That Order was revised to read as follows:

IT IS FURTHER ORDERED that this cause be and the same is hereby dismissed, without costs to any party, the Defendants having heretofore reinstated all defaults in the payment of said mortgage pursuant to Paragraph 19 of that certain mortgage agreement dated August 15, 1978 by and between Lamar Chapman, III and Vanessa Chapman, his wife as mortgagor, and First Federal of Chicago n/k/a Citicorp Savings of Illinois as mortgagee.

On July 31, 1987, the state trial court issued a written opinion ("July 1987 Order") granting Debtors' motion to vacate the Second Foreclosure Order. The question considered was whether a prior reinstatement under the Illinois Mortgage Act affects any independent contractual right to reinstate. The trial court noted:

The . . . issue is whether the reinstatement statute [Ill.Rev.Stat.1985, ch. 95, para. 57] effects paragraph 19, the reinstatement provision of the Mortgage Agreement. Namely, whether the statutory limitation that the mortgagor may obtain reinstatement only once every five years also applies to the contractual right of reinstatement, the terms of which contain no such limitation.

July 1987 Order at p. 9.

The trial court held that the parties had agreed to reinstatement separate and apart from the statutory right to reinstate. Thus, the trial court concluded that Debtors could reinstate and that Citicorp had improperly denied reinstatement. The court vacated the Second Foreclosure Order and ordered Citicorp to provide Debtors with a letter setting forth the amount due under the Mortgage:

In the present case, the parties agreed in the mortgage agreement that the mortgagors shall have a right to reinstate which is *"distinct and cumulative to any other right* or remedy under this mortgage or *afforded by law or equity* and may be exercised concurrently, independently, or successively". (para. 12). Therefore, the parties have agreed that the mortgagors shall have a right to reinstate which is independent of the statute. Nothing in the statute or in *State Farm* can be construed to limit so

clear a contractual provision. (emphasis originally supplied).

Therefore, the mortgagors' [Chapmans] contractual right to reinstate is not abrogated by the five year statutory limitation. Thus the plaintiff's refusal to provide the mortgagors with reinstatement figures based on the statutory limitation was in error. Since plaintiff improperly denied reinstatement and instead secured an order of summary judgment and judgment of foreclosure and sale, the court hereby vacates those orders and directs plaintiff to promptly provide the mortgagors with a letter setting forth the amount due under the mortgage agreement in order to reinstate.

July 1987 Order at p. 10–11.

The July 1987 Order also granted Debtors leave to file an amended answer on or before August 21, 1987.

Debtors filed an amended answer before the state court which contained an affirmative defense and a lengthy seven count counterclaim. Debtors' affirmative defense asserted that Citicorp's "unclean hands" precluded any relief requested. The counterclaim alleged breach of contract (Count I), fraud in the inducement (Count II), civil fraud (Count III), unfair competition (Count IV), violation of the Consumer Fraud and Deceptive Business Practices Act (Count V), violation of the Uniform Deceptive Trade Practices Act (Count VI), and violation of the Racketeering Influence and Corrupt Organizations Act (Count VII) ("First State Court Counterclaim"). Essentially, the First State Court Counterclaim sought damages caused by Citicorp's purportedly improper denial of reinstatement.

Citicorp responded by filing three motions: (1) to Strike Affirmative Defense; (2) to Strike and Dismiss Amended Verified Counterclaim; and (3) to Dismiss Amended Verified Counterclaim. The trial court issued a written order dated April 7, 1988, discussing these motions, briefs, and arguments of counsel ("April 1988 Order").

The April 1988 Order dismissed with leave to amend Debtors' affirmative defense, First State Counterclaim paragraphs 1 through 32, and First State Counterclaim counts II through VI. Also, the court dismissed with leave to amend count I except with respect to paragraphs "33, 34(b), 34(c), 34(d), 25(sic)(a), 25(sic)(c), and 25(sic)(d)." The trial court granted Debtors leave to amend by May 16, 1988. The trial court also dismissed the First State Court Counterclaim count VII (RICO) stating:

> That the respective Motions to strike and dismiss Count VII of Chapman's Amended Verified Counterclaim be and the same are hereby granted, and Count VII is hereby dismissed.

April 1988 Order.

On July 14, 1988, Debtors filed a Second Amended Verified Answer, Affirmative Defense, and Counterclaim against Citicorp. In their affirmative defense, Debtors claimed that Citicorp purposefully undermined their contractual right to reinstatement by refusing to allow Debtors to reinstatement. Thus, according to Debtors, Citicorp's "unconscionable conduct" invoked the equitable doctrine of "unclean hands" and prohibited Citicorp's requested relief.

The six count counterclaim alleged breach of contract (Count I), fraud in the inducement (Count II), civil fraud (Count III), unfair competition (Count IV), violation of the Consumer Fraud and Deceptive Business Practices Act (Count V), and violation of the Uniform Deceptive Trade Practices Act (Count VI) ("Second State Counterclaim"). Debtors omitted the prior seventh count alleging a violation of RICO. The Second State Court Counterclaim, like the first, sought damages caused by Citicorp's allegedly improper denial of reinstatement.

Citicorp again moved for summary judgment. On January 17, 1989, the trial court dismissed with prejudice Debtors' Affirmative Defense and Second Amended Counterclaim. The order reads as follows:

> This cause coming on to be heard upon various motions of the parties and the Court being fully advised in the premises:
>
> It Is Hereby Ordered that:
>
> 1.) Defendants', Lamar Chapman III and Vanessa M. Chapman, Affirmative

Defenses contained in their Second Amended Verified Answer to Complaint be and same are hereby stricken and dismissed with prejudice

2.) Defendants', Lamar Chapman III and Vanessa M. Chapman, Counterclaim, Counts I through VI, continued in the same are hereby stricken and dismissed with prejudice

3.) Citicorp Savings of Illinois is ordered to provide Defendants with reinstatement figures * within 14 days of this date by certified mail to defendants' counsel

4.) The Court finds that there is no just cause to delay the enforcement of this Order by appeal or otherwise

* late charges, attorney fees and costs through August, 1987.

("January 1989 Order").

The transcript of the proceedings discloses the reasoning behind the trial court's dismissal. The trial court explained that the April 1986 Order identifying reinstatement under the Mortgage Act, whether right or wrong, was a valid order upon which Citicorp could rely. Further, the court found that Judge Sklodowski's denial of request to vacate the April 1986 Order made it "judicially enforceable."

> Even if that order (April 1986 Order) was wrong, counsel moved to vacate it and when all was said and done, Judge Sklodowski refused to vacate. This meant that Chapter 95 Section 57 finding—that finding was judicially enforceable ...

*Citicorp Savings of Illinois v. Lamar Chapman*, 86 CH 10580 (January 17, 1989, transcript of proceedings), p. 17–18. The trial court concluded that Citicorp justifiably relied upon the April 1986 Order and Judge Sklodowski's refusal to vacate that order in denying reinstatement. The trial court held that Debtors could not assert their affirmative defense and counterclaim because they constituted an impermissible collateral attack upon Judge Sklodowski's order.

> ... the recognition of a cause of action in favor of Chapman for damages for (1) wrongfully invoking Chapter 95 language in the prior suit or (2) wrongfully

refusing to reinstatement in this suit relying upon that chapter would constitute a collateral attack on that final dismissal and therefore there can be no affirmative defense based upon the facts alleged in the pleading nor a counterclaim for damages ...

> The Court strikes and dismisses with prejudice the affirmative defenses and the counterclaim in toto ...

> ... if I recognize this cause of action or affirmative defense, it constitutes a collateral attack on Judge Sklodowski's order and that simply is not fair. Not only is it not fair but it does violence to the integrity of court orders ...

*Id.* at 18–20.

At the request of Debtors' counsel, the January 1989 Order was certified as a final and appealable order. *Id.* at 20–21.

Not until February 17, 1989, did Debtors file a Notice of Appeal from the January 1989 Order ("First Appeal"). Citicorp moved to dismiss the First Appeal as untimely. Debtors moved the Illinois Appellate Court for Leave to file Notice of Appeal Nunc Pro Tunc to February 16, 1989. Citicorp subsequently supplemented its pending motion to dismiss.

On May 25, 1989, Debtors moved the appellate court to dismiss the appeal without prejudice. Debtors argued the appellate court lacked substantive jurisdiction because the January 1989 Order was not final and appealable. On June 7, 1989, the appellate court granted Debtors' motion. The order reads as follows:

> Defendant–Appellant is hereby granted leave to dismiss its Appeal without prejudice to its right to refile said Appeal.

("First Appeal Order").

Also, on May 25, 1989, Debtors moved the trial court to amend the January 1989 Order. Debtors argued that language denominating the order as "final and appealable" was insufficient to grant the appellate court jurisdiction. Accordingly, Debtors requested the language in paragraph four be stricken, and the dismissal be certified for appeal. The trial court denied Debtors' motion on June 13, 1989.

On December 11 and 12, 1989, the trial court conducted a trial on the merits of Citicorp's Second Foreclosure Complaint. On January 24, 1990, the trial court entered a 10–page memorandum opinion and order in favor of Citicorp ("January 1990 Order").

The trial issues involved 1) whether Citicorp improperly denied Debtors' their right to reinstate, and 2) whether Debtors attempted to reinstate the Mortgage. The trial court stated:

> While the court and Defendants' counsel disagreed over the legal effect of the prior Chapter 95, Section 57 reinstatement, the court will assume, for the purposes of this trial, that the prior Chapter 95, Section 57 reinstatement did not bar Defendants from reinstating their mortgage arrears in this action. The issues to resolve, therefore, are whether or not Plaintiff refused to allow Defendants to reinstate in this action and, also, whether Defendants attempted to reinstate.

January 1990 Order at p. 3.

The trial court found that Debtors failed to prove Citicorp denied them the right to reinstate the mortgage arrears. Further, the trial court found that Debtors did not attempt to reinstate the Mortgage. Consequently, the trial court held in favor of Citicorp. The pertinent parts of the trial court's opinion are as follows:

> The court, therefore, finds that the Plaintiff *did* furnish Defendants reinstatement figures *twice* before the foreclosure complaint was filed. The court finds that Defendants chose *not* to reinstate and made no tender to reinstate. The court further finds that the Plaintiff complied with this court's order of July 31, 1987 and furnished Defendants' counsel with reinstatement figures *four times* and no attempt was made to reinstate.

> Therefore, the curt finds for the Plaintiff and against the Defendants and specifically finds that the Plaintiff *did* furnish reinstatement figures prior to filing the foreclosure action and that the Defen-

dants did not reinstate. (emphasis originally supplied).

January 1990 Order at p. 3.

The trial court's opinion however did not foreclose all opportunity of Debtors to reinstate their Mortgage. Invoking its equity powers, the trial court gave Debtors a final chance to save their home.

> The court recognizes that this is a court of equity. It further recognizes that adult litigants are expected to exercise a minimum degree of common sense and bad judgment should not excuse a litigant's cavalier actions. The court intends, therefore, to enter its order of foreclosure pursuant to the proofs and in the amount for which Plaintiff prays. Extending its equity powers, the court, however, will delay entry of its judgment of foreclosure and allow Defendants to tender the amount now due (including attorney's fees) in lieu of foreclosure. This tender must be paid within thirty (30) days after Plaintiff tenders the amount in default, costs and fees, to Defendants' counsel by certified mail, return receipt requested.

January 1990 Order at p. 3.

Debtors failed to tender the amount due.

On April 23, 1990, the trial court entered a judgment of foreclosure and sale ("April 1990 Order"). The April 1990 Order provided *inter alia* that Debtors would have to tender the sum of $90,855.19 in order to keep their home. Debtors filed a motion requesting the trial court to reconsider its April 1990 Order. The court denied the motion on June 19, 1990.

Three days later (June 22, 1990), Debtors appealed the April 1990 Order ("Second Appeal"). Citicorp filed a motion to dismiss Debtors' appeal because the April 1990 Order was not final and appealable. The Illinois Appellate Court granted Citicorp's motion on July 19, 1990 ("Second Appeal Order"), and dismissed Debtors' appeal.

Debtors proceeded to file an emergency motion to stay the Sheriff's sale and to amend the judgment of foreclosure and sale. On August 9, 1990, the trial court

stayed the Sheriff's sale ("August 1990 Order") scheduled for August 16, 1990, conditioned on Debtors posting bond in the amount of $23,600.00. The next day Debtors appealed this order ("Third Appeal"). Citicorp responded with a motion to dismiss the appeal.

### B. Bankruptcy Court Proceedings

On the scheduled date of the Sheriff's sale (August 16, 1990) and before a ruling on the Third Appeal, Debtors filed a petition under Chapter 13 of the Bankruptcy Code ("Code"). The Appellate Court, unaware of the bankruptcy filing, granted Citicorp's motion to dismiss the appeal on September 5, 1990. Because the appellate court rendered that ruling after the bankruptcy petition was filed, this Court found that action to have violated the automatic stay under 11 U.S.C. § 362.

On August 29, 1990, Citicorp filed its proof of claim in bankruptcy ("Claim") asserting a secured claim of $112,744.77, to which Debtors object. Debtors' objection consists of numbered responses to Citicorp's Claim, an affirmative defense, and a seven count counterclaim ("Objection") (later supplemented by an eighth count that is not the subject of the instant motion). The original counterclaim counts are as follows: breach of contract (Count I); fraud in the inducement (Count II); civil fraud (Count III); common law unfair competition (Count IV); violation of the Illinois Consumer Fraud Act (Count V); deceptive trade practices (Count VI); and, Racketeering Influenced and Corrupt Organizations Act (Count VII). Debtors did not file their Objection to claim as an adversary proceeding, but that is not necessary.[2]

The affirmative defense filed here is substantially similar to the prior affirmative defense filed in state court. Like the earlier affirmative defense, the present affirmative defense claims that Citicorp's attempt to circumvent Debtors' contractual right to reinstatement was "unconscionable."

Thus, the doctrine of "unclean hands," according to Debtors, should preclude Citicorp's requested equitable relief. The only differences between the two defenses is that: 1) the paragraphs are numbered differently; and, 2) paragraphs 14 through and including 16 are new to the pending affirmative defense. The new paragraphs allege facts showing that Lamar Chapman attempted to pay the delinquent mortgage payments prior to Citicorp's filing of its Second Foreclosure Complaint.

In the Debtor's Counterclaim here, Counts I through VI are substantially similar to the same counts of the Second State Court Counterclaim. Only Count I of the pending counterclaim deviates from the prior counterclaim. Counterclaim Count I here adds the same three paragraphs (pars. 14–16) that were added to the affirmative defense. These paragraphs concern the purported attempt by Lamar Chapman to make two late mortgage payments. Debtors have only slightly amended paragraph 33 of Count I concerning Citicorp's alleged breach of the Mortgage. That paragraph adds the two following subparagraphs complaining against Citicorp for

wrongfully including penalties, late charges and attorneys' fees in the amount claimed by Citicorp, notwithstanding that such costs and fees accrued only as a result of Citicorp's refusal to accept mortgage payments; and

wrongfully asserting that the order of dismissal in the action entitled *Citicorp Savings of Illinois v. Lamar Chapman, et. al.,* 85 CH 10827 bars the Chapmans' from exercising their contractual right to reinstate their mortgage in the foreclosure proceeding currently pending in the Circuit Court of Cook County, Illinois, notwithstanding that the Mortgage Agreement provides that the contractual right to reinstate is supplemental and in addition to any remedy at law or in equity.

---

**2.** Bankruptcy Rule 3007 provides that "If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Bankruptcy Rule 7001 states that an adversary proceeding includes a proceeding to recover money or property, or obtain an injunction or other equitable relief. See also discussion at footnote 3. Debtors Bankruptcy Counterclaim stands as an Adversary proceeding.

Debtors claim new damages in paragraph 34 which are:

the costs and expenses of filing for bankruptcy protection, including impairment of credit.

Counts II–VI in the Bankruptcy Counterclaim parallel with little change the causes alleged in counts II through VI of the Second State Counterclaim.

The only significant difference between the Second State Court Counterclaim and the original Counterclaim here is that the latter contains a seventh Count against Citicorp under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. However, the First State Counterclaim contained such a count, and the trial court dismissed that count by virtue of the April 1988 Order. Debtors neither appealed the April 1988 Order nor sought leave to amend the dismissed count.

## II. JURISDICTION

United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. §§ 1334(a) and (b). Each District Court is authorized to refer such proceedings to the Bankruptcy Judges for the District. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such a referral pursuant to Local Rule 2.33.

In a core proceeding that arises in or under Title 11, a Bankruptcy Judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(a). A proceeding to determine the validity of a proof of claim is a core proceeding. 28 U.S.C. § 157(b)(2)(B), as is a counterclaim by the estate against persons filing claims against the estate, 28 U.S.C. § 157(b)(2)(C). Therefore this Court has core jurisdiction over all matters and issues involved here.

## III. SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(e) (Bankruptcy Rule 7056), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n*, 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The primary difference between the two motions is procedural; summary judgment motions are usually made before the trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. In determining whether the evidence is sufficient, the court must consider the substantive evidentiary standard that would be ap-

plicable at trial. *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

■ A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motions, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, his response must demonstrate specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The Court should not "weigh the evidence." However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511; *Valley Liquors*, 822 F.2d at 659.

■ When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is not a genuine issue for trial and summary judgment should be granted. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

■ Rule 56(d), F.R.Civ.P., involves situations in which the motion does not lead to a judgment on the entire case but only terminates further contest on a portion of the litigation. Because Rule 56(d) is part of the rule entitled "Summary Judgment," the order prescribed by this rule has been referred to as "Partial Summary Judgment." C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2737 (2d ed. 1983 & Supp.1987). Summary Judgment is allowed if the order disposes entirely of one or more of the counts of the complaint, or the entire complaint itself.

*Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216 (7th Cir.1946); *Capitol Records, Inc. v. Progress Record Distributing Inc.*, 106 F.R.D. 25, 28 (N.D.Ill.1985) (Getzendanner, J.).

## IV. DISCUSSION

### A. Proof of claim

When a party properly files a proof of claim executed in accord with the Bankruptcy Rules, that proof of claim constitutes prima facie evidence of the validity and amount of that claim, Federal Rules of Bankruptcy Civil Procedure 3001(f); *In re Kham & Nate's Shoes No. 2, Inc.*, 97 B.R. 420, 424 (Bankr.N.D.Ill.1989), unless debtor or other party-in-interest objects. 11 U.S.C. § 502(a).

■ Because a valid proof of claim is prima facie evidence of its validity, the burden is on the objector to introduce evidence rebutting the presumption. *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696 (5th Cir.1988); *In re BRI Corp.*, 88 B.R. 71 (Bankr.E.D.Pa.1988); *In re Horizon Machinery & Engineering Corp.*, 54 B.R. 669, 670 (Bkrtcy.N.D.Ill.1985) citing *Wilson v. Huffman*, 712 F.2d 206, 212 (5th Cir.1983). Filing an objection to the claim without more is insufficient to challenge the rebuttable presumption. *In re Glenn*, 100 B.R. 763 (Bankr.W.D.Pa.1989).

■ Once the objector has produced some evidence disputing the validity of a claim, the burden shifts to the claimant. *In re Missionary Baptist Foundation of America, Inc.*, 818 F.2d 1135 (5th Cir.1987); *In re Lampert*, 61 B.R. 785 (Bankr. W.D.Wis.1986). The burden of establishing a valid claim ultimately rests with the creditor. *In re All–American Auxiliary Assoc.*, 95 B.R. 540, 544–45 (Bankr. S.D.Ohio 1989); *In re Farmer's Co-op of Arkansas & Oklahoma, Inc.*, 43 B.R. 619, 620 (Bankr.W.D.Ark.1984).

■ In this proceeding, Citicorp properly filed a proof of claim in accord with Bankruptcy Rule 3001. Citicorp asserts it is entitled to a secured claim of $112,-744.77. This claim constitutes prima facie evidence of the amount owing. *Kham &*

*Nate's Shoes,* 97 B.R. at 424. It will prevail unless the defenses or counterclaim prevail.

 Among other requests, in their Counterclaim Debtors urge the Court to award Debtors compensatory damages, punitive damages, reinstatement of their mortgage, an injunction against Citicorp to prevent the entering of orders providing reinstatement under the *Mortgage Act,* and treble damages. Because Debtors seek relief of the kind specified under Bankruptcy Rule 7001,[3] the Objection should ordinarily have been filed as an Adversary proceeding. *In re Waldvogel,* 125 B.R. 13 (Bankr. E.D.Wis.1991). However, Debtors failure to file their Objection as an adversary is not fatal. *In re Washington Manf. Co.,* 128 B.R. 198 (Bankr.M.D.Tenn.1991) (objection filed in bankruptcy case requesting relief of a type specified under Bankruptcy Rule 7001 was treated as an Adversary proceeding).

#### B. The Doctrine of Res Judicata

Citicorp moved for summary judgment premised upon the doctrine of res judicata.[4] Relying on 28 U.S.C. § 1738, Citicorp argues that this Court must give the same full faith and credit to state court judgments as it does for judgments of federal courts. According to Citicorp, Illinois law precludes Debtors from raising the present affirmative defense and counterclaim because those arguments were fully adjudicated in the prior state court proceeding. Thus, Citicorp concludes that the January 1989 Order, dismissing the prior affirmative defense and counterclaim, is a final judgment barring Debtors' Objection.

Debtors concede that this Court is bound to give full faith and credit to state court judgments. However, Debtors dispute application of res judicata because they say that the prior and present litigation do not involve the same causes of action. Conceding similarity between the affirmative defenses and Counts I through VI of the Counterclaims,[5] Debtors argue that Bankruptcy Counterclaim Count VII and VIII are completely new, and operate to bar the application of the doctrine of res judicata. Count VII asserts a claim under the Racketeering Influence and Corrupt Organizations Act (RICO). Because the RICO claim was not dismissed by virtue of the January 1989 Order, the Court will separately address whether that claim is barred by res judicata.

 The res judicata doctrine serves the interests of judicial economy and finality by barring both parties to a judgment and their privies from relitigating the identical cause of action. *Durhan v. Neopolitan,* 875 F.2d 91, 93–94 (7th Cir.1989). Under this principle, the nature and amount of the judgment, together with all defenses that could have been raised in the prior litigation, are foreclosed. *Falcon v. Faulkner,* 209 Ill.App.3d 1, 153 Ill.Dec. 728, 736, 567 N.E.2d 686, 694 (4th Dist. 1991). A federal court must give the same full faith and credit to a prior state court judgment that it would receive in the courts of the state in which it was rendered. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir.1982). The doctrine of res judicata applies in the bankruptcy context. *Crop–Maker Soil Services, Inc. v. Fairmount*

---

**3.** Bankruptcy Rule 7001 provides in pertinent part:

> An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property ... (2) to determine the validity, priority, or extent of a lien or other interest in property ... (7) to obtain an injunction or other equitable relief ... (9) to obtain a declaratory judgment relating to any of the foregoing ...

**4.** In passing, Citicorp argues that equitable or collateral estoppel applies. These theories are

neither explained by Citicorp nor supported by cited case law. The Seventh Circuit has warned parties against making unexplained and unsupported allegations lest they forfeit the argument. *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990). However, this Court will not address those points because the res judicata doctrine is dispositive of the issues.

**5.** Debtors also concede that the affirmative defense and counterclaim (counts I–VI) arose from the same operative facts. Debtors' Memorandum in Opposition, p. 19–20.

*State Bank,* 881 F.2d 436, 439 (7th Cir. 1989).

██ Res judicata applies if the following elements are met: (1) there is identity of the parties or their privies in the two suits; (2) there is identity of the causes of action in both the prior and subsequent suits; and (3) a final judgment on the merits was entered in the prior action. *In re Energy Cooperative, Inc.,* 814 F.2d 1226, 1230 (7th Cir.1987); *Ellens v. Chicago Area Office Federal Credit Union,* 216 Ill.App.3d 101, 159 Ill.Dec. 594, 576 N.E.2d 263 (1st Dist.1991); *First Bank and Trust Co. v. Timmons,* 208 Ill.App.3d 1059, 153 Ill.Dec. 820, 567 N.E.2d 778 (5th Dist.1991). This Court looks to Illinois law to determine the preclusive effect of the January 1989 Order entered by the state trial court. *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir.1982).

### 1. *Identity of parties*

██ Citicorp argues an identity of parties between the state court litigation and the present proceeding. An identity of parties simply means that the prior and later proceedings involve the same parties in substantially the same capacity. Debtors concede this point.

Debtors raise the pending affirmative defense to Citicorp's claim of monies owed on the Mortgage. In the prior litigation, Debtors argued the same affirmative defense (unclean hands) against the same party (Citicorp). The only difference between the affirmative defenses involves the forum in which they are brought.

Similarly, the prior and present counterclaims involve the same parties. Citicorp is the counter-defendant in both the Bankruptcy Counterclaim and Second State Counterclaim. Additionally, Debtors in both actions pursue their counterclaims as counter-plaintiffs. No new parties have been impleaded nor joined. The two actions consist of the same parties in the same capacity. The Court finds an identity of parties named in the prior and present proceedings.

### 2. *Identity of causes of action*

Secondly, Citicorp asserts an identity of causes of action in the earlier and later suits. Citicorp points to the substantial similarity of the language between the prior and present affirmative defenses and counterclaim Counts I through VI. While conceding there is substantial similarity, Debtors argue, with no support nor explanation,[6] that a complete identity of causes of action between the two suits does not exist.

As noted by the Seventh Circuit, Illinois courts substantially conflict on the precise definition of the term "cause of action." *Hagee v. City of Evanston,* 729 F.2d 510, 513 (7th Cir.1984). The Court of Appeals observed that the decisions of the Illinois appellate courts seem to fall into two distinct groups. *Id.* In the first group, courts have looked to overlap in the proof or evidence necessary to sustain both claims. In other words, if the same evidence supports both claims then the two suits arise from the same "cause of action." *Id.; Lee,* 685 F.2d at 200; *Carey v. Neal,* 216 Ill.App.3d 51, 159 Ill.Dec. 551, 576 N.E.2d 220 (1st Dist.1991); *Redfern v. Sullivan,* 111 Ill. App.3d 372, 376, 67 Ill.Dec. 166, 169, 444 N.E.2d 205, 208 (4th Dist.1982). The second group applies a test more akin to the federal rule known as the "same transaction" approach. Under this test, "If both suits arise from the same transaction, incident or factual situation, res judicata generally will bar the second suit." *Hagee,* 729 F.2d at 513; *Meyers v. Kissner,* 217 Ill.App.3d 136, 160 Ill.Dec. 140, 576 N.E.2d 1094 (5th Dist.1991); *Radosta v. Chrysler Corp.,* 110 Ill.App.3d 1066, 1069, 66 Ill.Dec. 744, 747, 443 N.E.2d 670, 673 (1st Dist. 1982). The Illinois Supreme Court has not explicitly adopted one approach over the other. *Meyers,* 160 Ill.Dec. at 147, 576 N.E.2d at 1101.

In *Hagee,* the Court of Appeals examined the Illinois Supreme Court's policies pronounced in applying res judicata. *Hagee,* 729 F.2d at 513. The Seventh Circuit con-

---

**6.** If a party raises an argument, that party bears the burden of support and explanation, not the court. *In re BNT Terminals, Inc.,* 125 B.R. 963, 977–78 (Bankr.N.D.Ill.1990).

cluded that Illinois Supreme Court preferred application of the res judicata doctrine to preclude suits arising from the same transaction or factual situation. *Id.* at 514. Therefore, this Court evaluates the present proceeding under the "same transaction" approach.

The pending affirmative defense differs from the prior defense in state court in only three paragraphs. Those three paragraphs concern Lamar Chapman's purported attempt to pay the delinquent mortgage payments prior to Citicorp's Second Foreclosure Proceeding. However, these facts were presented to and considered by the State Court at trial. *See* January 1990 Order, p. 3. Except for those three paragraphs, Debtors' pending defense is a reincarnation of the prior defense on which the Chapmans lost at trial. The three new paragraphs fail to take the pending defense outside the set of operative facts underlying the prior defense. Indeed, the present affirmative defense arises from the same set of operative facts as the affirmative defense dismissed by virtue of the State Court's January 1989 order.

Similarly, Second State Court Counterclaim Counts I through VI are reborn in Bankruptcy Counterclaim counts I through VI. Both counterclaims center around Citicorp's purportedly improper denial of restatement. The only deviation in wording is the three paragraphs concerning Lamar Chapman's attempt to pay the delinquent Mortgage payments. As previously noted, the latter assertions were presented to and considered by the state court. These facts do not take the Bankruptcy Counterclaim outside the set of operative facts underlying the Second State Counterclaim.

The only other changes relate to claimed damages in paragraphs 33 and 34 of count I. In paragraph 33 the newly identified damages are part and parcel of the same facts supporting the Second State Counterclaim. These asserted damages are the alleged result of Citicorp's failure to accept tendered mortgage payments. However, the trial court held that Debtors were not entitled to damages because Citicorp did not improperly deny reinstatement or re-

fuse delinquent mortgage payments. Thus, Debtors' new damages fail to take the Bankruptcy Counterclaim outside of the transaction adjudicated in state court.

The damages claimed in paragraph 34, like those claimed in paragraph 33, rely upon facts underlying Count I. "But for" Citicorp's purportedly improper denial of reinstatement, Debtors would not have filed bankruptcy and suffered the asserted new damages. Moreover, paragraphs 33 and 34 arise from the same set of facts underlying the Second State Counterclaim because those paragraphs rely on the same Count to support the claimed damages. Debtors have alleged no new facts which would take the pending counterclaim outside the set of operative facts underlying the Second State Court Counterclaim. They have alleged damages which are only the consequence of transaction fully reviewed by the State Court.

### 3. *Final judgment*

The third and final element of the res judicata doctrine concerns the finality of the state court judgment. *Energy Cooperative*, 814 F.2d 1226, 1230; *Timmons*, 567 N.E.2d 778. As previously discussed, Debtors have asserted the same affirmative defense and counterclaims (Counts I–VI) that the trial court dismissed with prejudice by virtue of the January 1989 Order. Paragraph four of that order reads:

The Court finds that there is no just clause to delay the enforcement of this Order by appeal or otherwise [sic]

January 1989 Order.

Citicorp argues that the January 1989 Order meets the finality requirement of the res judicata doctrine because the foregoing language is a finding under Illinois Supreme Court Rule 304(a). This rule requires an order to contain an express finding that no reason exists for delaying appeal. Rule 304(a) reads in pertinent part:

If multiple parties or multiple claims for relief are involved in an action, *an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for*

*delaying enforcement or appeal....*
In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties. (emphasis added).

Ill.Rev.Stat. Ch. 110A, ¶ 304(a) (1988).

Debtors argue that the language contained in the order is insufficient to grant the appellate court jurisdiction to hear an appeal of the January 1989 Order.

The Illinois Supreme Court has instructed that a trial court's finding of "no just reason to delay enforcement or appeal" does not automatically grant appellate jurisdiction. *In re Marriage of Lentz*, 79 Ill.2d 400, 38 Ill.Dec. 582, 585, 403 N.E.2d 1036, 1039 (1980). Rather, finality turns on whether a judgment absolutely fixes the rights of the parties, and leaves only the execution of the judgment. *Kellerman v. Crowe*, 119 Ill.2d 111, 115 Ill. Dec. 591, 518 N.E.2d 116 (1987).

> A final judgment has been defined as a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit. (citations omitted). We have also stated on many occasions that the judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.

*Flores v. Dugan*, 91 Ill.2d 108, 61 Ill.Dec. 783, 785, 435 N.E.2d 480, 482 (1982).

In the prior state court proceeding, the January 1989 Order dismissed with prejudice Debtors' affirmative defense and counterclaim (counts I–VI). Debtors assert that dismissal of an affirmative defense is not final while Citicorp claims that it is. Neither party cites any controlling authority.

Under Illinois law, dismissal of a counterclaim accompanied by Supreme Court Rule 304(a) language is a final judgment. *Universal Underwriters Ins. Co. v. Long*, 215 Ill.App.3d 396, 158 Ill.Dec. 891, 574 N.E.2d 1284 (4th Dist.1991); *Deerfield Management Co. v. Ohio Farmers Insurance*, 174 Ill.App.3d 837, 124 Ill.Dec. 423, 529 N.E.2d 243 (2d Dist.1988); *see Arachnid, Inc. v. Beall*, 210 Ill.App.3d 1096, 155 Ill.Dec. 662, 569 N.E.2d 1273 (2d Dist.1991) (dismissal of a counterclaim is final only if Supreme Court Rule 304(a) language is included in order). The January 1989 Order dismissed the Second State Counterclaim and contained the substance of Supreme Court Rule 304(a) language. Therefore, the January 1989 Order constitutes a final and appealable order.

Debtors argue that the January 1989 Order was not final because it left Citicorp's lawsuit undecided. However, Debtors' explanation is lacking. Debtors rely on *Findley v. Posway*, 118 Ill.App.3d 824, 74 Ill. Dec. 432, 455 N.E.2d 861 (1st Dist.1983) for the proposition that "where an order of the court leaves a cause still pending and undecided, it is not a final order." Debtors claim the January 1989 Order lacked finality because their Answer asserted essentially the same arguments as the affirmative defense and counterclaim. Leaving Citicorp's Second Foreclosure Complaint pending, according to Debtors, destroyed any finality of the January 1989 Order. Debtors' argument is not supported by *Findley*.

Firstly, Debtors misconstrue the *Findley* decision. In *Findley*, the circuit court denied counter-defendant's motion to strike counter-plaintiff's counterclaim. The counter-defendant appealed. The appellate court held that the order denying a motion to strike is not a final judgment. Referring to the pending counterclaim, the appellate court explained that even though Supreme Court Rule 304(a) language was included, the denial did not terminate and dispose of the parties' rights regarding issues in that action, but rather left the cause still pending and undecided. *Id.* 74 Ill.Dec. at 434, 455 N.E.2d at 863.

The present proceeding is not similar to *Findley*. Here, the January 1989 Order dismissed with prejudice the Second State Counterclaim which terminated and disposed of the litigation issues raised, and thus left nothing to decide. However, in

*Findley*, the denial of the Motion to Strike disposed of only that motion, and left pending the underlying counterclaim. *Id.* Thus, the *Findley* reasoning is not applicable.[7]

*Deerfield* is more akin to the facts here. In a single order, the trial court dismissed with prejudice the counterplaintiff's counterclaim, but left the plaintiff's complaint pending. *Deerfield*, 124 Ill.Dec. at 425, 529 N.E.2d at 245. That portion of the order granting summary judgment on the counterclaim was held to be final because it adjudicated rights of the parties and claims there. *Id.* The Illinois appellate court held that pendency of the complaint had no affect on finality of the portion of the order involving the counterclaim. *Id.* 124 Ill.Dec. at 427, 529 N.E.2d at 247.

In Debtors' litigation in State Court, the trial court dismissed with prejudice Debtors' counterclaim, but left pending Citicorp's underlying complaint. As in *Deerfield*, the January 1989 Order dismissing the counterclaim disposed of the claims and parties to that action. The January 1989 Order was final, and its finality is not diminished by the unadjudicated claims and parties to Citicorp's underlying complaint. *Deerfield*, 124 Ill.Dec. at 427, 529 N.E.2d at 247.

■ As earlier discussed, the January 1989 Order dismissing Second State Counterclaim Counts I through VI constituted a final order. Debtors presume, however, that an order dismissing an affirmative defense is not final, and thus destroys the finality of said order. As previously noted, little explanation or case law has been cited on this issue.

Orders dismissing complaints and counterclaims settle the disputes between the parties as to the claims raised, and thus leave nothing to decide. *Universal Underwriters Ins. Co. v. Long*, 215 Ill.App.3d 396, 158 Ill.Dec. 891, 574 N.E.2d 1284 (4th Dist.1991); *Deerfield*, 529 N.E.2d 243. However, orders dismissing an affirmative defense are creatures of a different nature. Those orders terminate only the parties to and claim of the affirmative defense, and leave pending the underlying action to which the affirmative defense was raised. Thus, an order dismissing an affirmative defense is not final. *City of Chicago v. Piotrowski*, 215 Ill.App.3d 829, 159 Ill.Dec. 395, 576 N.E.2d 64 (1st Dist.1991); *Geier v. Hamer Enterprises, Inc.*, 1991 WL 9328 (1st Dist.1991); *Shelton v. Andres*, 122 Ill. App.3d 1089, 78 Ill.Dec. 430, 462 N.E.2d 549 (5th Dist.1984). To the extent that the January 1989 Order dismissed the Debtors' affirmative defense, dismissal of that defense was not itself final.

■ On January 24, 1990, the trial court entered a judgment of foreclosure and sale in favor of Citicorp on its Second Foreclosure Complaint. Ordinarily such a judgment would be final and appealable because it adjudicated the mortgagee's and mortgagor's rights to the underlying complaint, including any defenses. *Bell Federal Sav. and Loan Ass'n v. Bank of Ravenswood*, 203 Ill.App.3d 219, 148 Ill.Dec. 559, 560 N.E.2d 1156 (1st Dist.1990). According to Illinois courts, however, a judgment of foreclosure itself determines fewer than all rights and liability in issue, because the trial court has still to enter a subsequent order approving foreclosure sale and directing distribution. *Marion Metal*, 448 N.E.2d 219. Therefore, the January 1990 Order is not final, and thus res judicata does not preclude Debtors from raising the same affirmative defense raised

---

7. Debtors also misconstrue *Marion Metal & Roofing Co., Inc. v. Mark Twain Industries, Inc.*, 114 Ill.App.3d 33, 69 Ill.Dec. 759, 448 N.E.2d 219 (5th Dist.1983), as standing for the proposition that "an order dismissing a counterclaim in a foreclosure proceeding is not final and appealable." Debtors' Memorandum in Opposition, p. 17. The *Marion Metal* court held that an order dismissing defendant's counterclaim was not final and appealable due to the absence of the requisite Supreme Court Rule 304(a) language. *Marion Metal*, 448 N.E.2d at 221. As previously noted, Illinois case law recognizes an order dismissing a counterclaim as final if accompanied by the requisite Supreme Court Rule 304(a) language. *Universal*, 574 N.E.2d 1284; *Arachnid*, 569 N.E.2d 1273; *Deerfield*, 529 N.E.2d 243.

in the prior proceeding.[8] It remains open to the Illinois trial court to revisit those defenses before entering the order approving sale.

Debtors next argue that where an affirmative defense and a counterclaim overlap, dismissal of the counterclaim is not a final and appealable order. Debtors cite *Dwyer v. Graham,* 110 Ill.App.3d 316, 66 Ill.Dec. 26, 442 N.E.2d 298 (2d Dist.1982) for support. Debtors misconstrue the *Dwyer* decision.

In *Dwyer,* the defendant appealed a circuit court order declaring a lease unenforceable. The appellate court dismissed for lack of jurisdiction because the trial court retained jurisdiction over defendant's counterclaim, and because the trial court did not make a Supreme Court Rule 304(a) finding. Following the appellate court's dismissal, the defendant moved to dismiss his pending counterclaim. The motion was granted. Defendant again appealed the declaratory judgment. *Dwyer,* 442 N.E.2d at 299. The plaintiffs moved to dismiss the appeal for lack of jurisdiction. *Id.* at 300.

The appellate court in *Dwyer* observed that the basis for the defendant's counterclaim also served as the basis for his underlying affirmative defense. The appellate court explained however that "the dismissal of the counterclaim with prejudice affects only the issues involved in the counterclaim and not the completely separable issues involved in the appeal ..." *Id.* In other words, the court found that the defendant there was not precluded from arguing issues on appeal simply because those issues served as the basis for an affirmative defense which was not dismissed. *Id.* The *Dwyer* court never made a finding that the overlap of an affirmative defense and counterclaim precludes the finality of any order dismissing the counterclaim.

The *Deerfield* decision contradicts Debtors' argument. In *Deerfield,* the trial court entered an order denying plaintiff's

motion for summary judgment on its complaint. The same order granted counterplaintiff's motion for summary judgment on its counterclaim. *Deerfield,* 124 Ill.Dec. at 424–25, 529 N.E.2d at 244–45. The court held that the portion of the order granting summary judgment on the defendant's counterclaim is final while the portion denying summary judgment is not final. *Id.* In accepting jurisdiction, the court explained that the finality of the portion of the order granting summary judgment was not diminished by the non-finality of the other portion. *Id.* 124 Ill.Dec. at 427, 529 N.E.2d at 247.

> As was previously noted, the order granting summary judgment on Ohio's counterclaim for a declaratory judgment was a final judgment with respect to that claim. (citations omitted). Moreover, the trial court found there was "no just reason to delay enforcement or appeal" of the order. (citation omitted). Thus, although there has not been a final judgment as to all claims and parties in the case at bar, the final judgment as to Ohio's counterclaim is nonetheless appealable. (citations omitted).

*Id.* 124 Ill.Dec. at 427, 529 N.E.2d at 247.

Similarly, the January 1989 Order in Debtors' litigation terminated all litigation by them against Citicorp on the counterclaim. Even though the January 1989 Order contains a non-final ruling as to dismissal of Debtors' defense, like denial of summary judgment in *Deerfield,* the non-finality of that portion of the order does not diminish the finality of the other portion. *Deerfield,* 124 Ill.Dec. at 427, 529 N.E.2d at 247.

The reasoning in *Dwyer* comports with the *Deerfield* holding. As explained, the *Dwyer* defendant dismissed his counterclaim which asserted claims also argued on appeal. The *Dwyer* court noted that issues in the counterclaim had no impact on the issues appealed because the counterclaim constituted a completely separable action.

---

8. Debtors' affirmative defense is simply a response which contests Citicorp's Claim. Citicorp filed a proof of claim asserting a right to $112,744.77. Debtors object claiming Citicorp's "unclean hands" bar its requested recovery. This response does not request relief of a type provided under Rule 7001, and thus does not qualify as an adversary proceeding.

*Dwyer* 442 N.E.2d at 300. Likewise, the *Deerfield* court separated the counterclaim and complaint, and permitted the appeal of the former. *Id.* 124 Ill.Dec. at 427, 529 N.E.2d at 247.

Here, the January 1989 Order dismissed the counterclaim and an affirmative defense. However, dismissal of the affirmative defense was not final even though the requisite Supreme Court Rule 304(a) language was included. The counterclaim, however, is an issue separate and apart from the affirmative defense, because, like *Dwyer*, the two involve separate actions. The affirmative defense is directed solely toward the underlying complaint, not the counterclaim. Thus, dismissal of Debtors' affirmative defense in State Court affected only the parties to that defense and the underlying complaint to which it was raised. It did not impact on the completely separate and independent issues involved in the counterclaim, and any claimed overlap. *Dwyer*, 442 N.E.2d at 300.

█ Debtors finally argue that the First Appeal Order shows the non-finality of the January 1989 Order. The trial court dismissed the Second State Counterclaim (including the affirmative defense of "unclean hands") on January 17, 1989. Supreme Court Rule 303(a) requires a notice of appeal to be filed within 30 days after the entry of the final judgment from which the appeal emanates. Ill.Rev.Stat. Ch. 110A ¶ 303(a). Debtors filed their notice of appeal on February 17, 1989, 31 days after entry of the January 1989 Order. Citicorp moved to dismiss the First Appeal as untimely. On May 25, 1989, Debtors filed a motion requesting the appellate court to dismiss the appeal without prejudice. Without explanation, the appellate court granted Debtors' motion. Debtors now argue that this dismissal shows that the appellate court dismissed the appeal because the January 1989 Order was not a final judgment. Debtors argue that the only inference this Court should draw from the First Appeal Order is that appellate jurisdiction had not attached because the order was not final.

This Court need not draw that inference from the First Appeal Order. The January 1989 Order was final adjudication of the claims and parties to the Second State Counterclaim. Also, the January 1989 Order contained the requisite Supreme Court Rule 304(a) language denominating the order a final judgment of the merits. Consequently, the January 1989 Order dismissing the Second State Counterclaim constituted a final and appealable order. *Deerfield*, 529 N.E.2d 243. The First Appeal Order did not contradict this conclusion.

### C. RICO claim

█ The next item this Court must address is whether the April 1988 Order dismissing Debtors' previous RICO claim (First State Counterclaim count VII) bars them from now raising the claim in this proceeding. The April 1988 Order dismissed the RICO claim without explanation, and failed to include the requisite Supreme Court Rule 304(a) language denominating the order as "final and appealable." However, Citicorp argues the res judicata doctrine still precludes Debtors' raising of the RICO claim in this proceeding because it could and should have been raised in the prior litigation as a counterclaim. Accordingly, Citicorp concludes that Debtors' failure to pursue a RICO action in state court operates to bar any subsequent action based on this claim in Federal Court.

█ The preclusive effect of the res judicata doctrine bars not only those issues which actually were decided in a prior action but also any issues which could have been raised. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir.1988); *Spiller v. Continental Tube*, 95 Ill.2d 423, 432, 69 Ill.Dec. 399, 403, 447 N.E.2d 834, 838 (1983) (res judicata extends "not only to questions which were actually litigated but also to all questions which could have been raised or determined").

Res judicata ensures the finality of decisions. Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." (Citations omitted.) Res judicata prevents litigation of all grounds for, or defenses to, recovery

that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. (Citations omitted.) Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

*Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). The res judicata doctrine also prohibits the raising of defenses whether in the form of an affirmative defense or counterclaim. *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986); *Hughey v. Industrial Commission,* 76 Ill.2d 577, 582, 31 Ill.Dec. 787, 789, 394 N.E.2d 1164, 1166 (1979).

The Illinois courts have held that res judicata bars all grounds of recovery and defenses which might have been presented in the prior litigation between the parties. *Leitch v. Hine,* 393 Ill. 211, 220, 66 N.E.2d 90, 95 (1946); *see Lake v. Tomes,* 405 Ill. 295, 300–301, 90 N.E.2d 774, 777 (1950); *see also Hughey,* 31 Ill.Dec. at 789, 394 N.E.2d at 1166.

A defendant therefore may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment. (citation omitted). Just as the policies behind the doctrine of *res judicata* are designed to discourage the piecemeal litigation of claims, so are they designed to prevent the piecemeal presentation of defenses.

*Henry,* 808 F.2d at 1234 citing *Bernard Bros., Inc. v. Deibler,* 344 Ill.App. 222, 230, 100 N.E.2d 512, 516 (2d Dist.1951).

Debtors do not dispute that the RICO claim satisfies the similar identity of parties element. Count VII involves the same parties in the same capacity, as the parties to the April 1988 Order. Thus, the Court must determine whether Debtors' RICO claim arises from the same set of operative facts as those facts which support Counts I through VI. If so, then the Court must decide whether the RICO claim could and should have been brought in the prior litigation.

As previously explained, to determine whether the RICO claim arises from the same set of operative facts as Counts I through VI, under Illinois law the claim must arise from the same transaction as the Second State Counterclaim. *Hagee,* 729 F.2d at 513; *Lee,* 685 F.2d at 200. The RICO count incorporates by reference the facts articulated under Counts I and IV. Therefore, by its own pleading, the RICO Count arises from the same set of operative facts and transaction as those pleaded under Counts I and IV. The additional allegations in Count VII buttress this conclusion.

Ream [9] has conducted the affairs of Citicorp through a pattern of racketeering activity in violation of 18 U.S.C. Section 1962(c). Ream has engaged in several separate racketeering schemes, each of which is designed to prohibit mortgagors from reinstating mortgages in default and to obtain wrongfully foreclosed residences.

Ream, and/or his agents committed acts of mail fraud by:

wrongfully instituting and pursuing foreclosure actions, prior to informing mortgagors of their right to reinstate their respective mortgages;

wrongfully causing orders of dismissal to be entered which prohibit a mortgagor from reinstating his mortgage more than once in five (5) years, notwithstanding the mortgagor's contractual right to reinstate, and mailing such orders to the mortgagor; and

wrongfully causing foreclosures to occur, notwithstanding the mortgagor's contractual right to reinstate, and notifying the mortgagor of foreclosure and the Sheriff's sale by mail.

These predicate acts of mail fraud comprise a continuing pattern of racketeer-

---

9. Mr. Ream is asserted to be the President and Chief Executive Officer of Defendant, Citicorp from March 1, 1984 through the filing of the Second State Counterclaim. John Ream was eventually dismissed from the state court proceedings by virtue of a state court order dated April 7, 1988.

ing activity beginning in 1984 and continuing to present, which has resulted indirect injuries to Debtors' property and to the property of other mortgagors, including, but not limited to loss of homes, loss of credit, and emotional and physical suffering.

Indeed, these paragraphs allege nothing new except for elements necessary to bring Count VII within RICO, and a gloss of allegations suggesting that the alleged wrongs against Debtors were commonly perpetuated against others. Even though Debtors claim a conspiracy and mail fraud, they rely solely upon Citicorp's purportedly improper conduct in denying the right to reinstate. Whether Citicorp's conduct was wrongful, as alleged under paragraphs 1 through 31 of Count I and paragraph 33 under count IV, all incorporated by reference within the RICO claim, is crucial to determining validity of the RICO claim. The RICO claim is born from the same facts supporting Counts I and IV, and thus dies with the dismissal of those Counts. No matter how Debtors characterize the RICO claim, that claim cannot bring Counts I and IV back to life, nor can it collaterally attack or reverse the State Court order finally adjudicating those Counts. Count VII arises from the same set of operative facts and transaction as were alleged in the Second State Counterclaim Counts I and IV, and it died with those counts.

Debtors' RICO claim could survive only if they were precluded from raising that claim in the prior litigation. Citicorp argues that the RICO claim could and should have been brought in the prior litigation. Debtors on the other hand argue that they *could not* bring the RICO claim in the prior action because the federal court has exclusive jurisdiction.

This issue of jurisdiction is crucial to Debtors' RICO claim. If the federal courts have exclusive jurisdiction of RICO, then the prior dismissal would have no preclusive effect on Debtors raising a RICO claim in federal district court based on the same facts. However, if Illinois courts have concurrent jurisdiction over RICO claims, Illinois res judicata rules would bar the RICO action because it could have been brought

as part of the prior suit in state court. *Karel v. Kroner*, 635 F.Supp. 725, 728 (N.D.Ill.1986).

The RICO statute itself does not expressly indicate whether State courts may exercise jurisdiction over cases brought pursuant to it (18 U.S.C. § 1964). Authorities on the subject have been in conflict, with some courts holding Federal courts enjoy exclusive jurisdiction, *Hampton v. Long*, 686 F.Supp. 1202 (E.D.Tex.1988); *Intel Corp. v. Hartford Acc. and Indem. Co.*, 662 F.Supp. 1507 (N.D.Cal.1987); *Ideal Stencil Machine & Tape Co. v. Merchiori*, 600 F.Supp. 185 (S.D.Ill.1985); *County of Cook v. Midcon Corp.* 574 F.Supp. 902, 911–12 (N.D.Ill.1983), *aff'd* 773 F.2d 892 (7th Cir. 1984), and others determining that jurisdiction is concurrent. *Reeder v. Kermit Johnson, Alphagraphics, Inc.*, 723 F.Supp. 1428 (D.Utah 1989); *Ritchie v. Carvel Corp.*, 714 F.Supp. 700 (S.D.N.Y.1989); *Kim v. Pereira Enterprises, Inc.*, 694 F.Supp. 200 (E.D.La.1988); *Karel v. Kroner*, 635 F.Supp. 725 (Plunkett, J.). *See County of Cook v. Midcon Corp.*, 773 F.2d 892, 905 n. 4 (7th Cir.1984) (suggesting, but not holding, that jurisdiction is concurrent). The United States Supreme Court has settled this issue by holding that states do have concurrent jurisdiction over RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990).

Based upon the *Tafflin* decision, Debtors' claim that they could not bring a RICO claim fails. Debtors could have pursued their RICO claim in the prior litigation.

Debtors should have brought the RICO claim in State Court if they wanted to pursue it. Because the RICO claim arises from the same set of facts and transaction as the rest of the State Court litigation, it should have been asserted and adjudicated in the prior action to avoid piecemeal litigation. *Durhan*, 875 F.2d 91; *Falcon*, 567 N.E.2d 686. Debtors could have either amended the RICO count or appealed the dismissal. Debtors did neither. Now, they want a second bite from the same apple by bringing a RICO claim based upon the same facts in federal court. The Seventh Circuit has refused to allow what Debtors now attempt. *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir.1986).

*Henry* arose out of an ordinary mortgage foreclosure in state court. The Henrys executed a promissory note in favor of the Defendant Bank. They defaulted and the Bank foreclosed. A judgment of foreclosure was entered. *Id.* at 1230. The Henrys appealed on a number of grounds but none involving a claim that the mortgage was a forgery or obtained through fraud. *Id.* at 1231. After the state court litigation, the Henrys filed a complaint in federal district court alleging RICO. *Id.*

The Court of Appeals noted that the Henrys' RICO claim was based upon allegations of fraud and forgery. The court held that "Having failed to raise those allegations before the state court, the Henrys cannot attack the state court judgments by subsequently filing RICO claims based on the same facts in federal court." *Id.* at 1235–36. The court held that res judicata barred the RICO claim. *Id.*

Similarly, Debtors here filed a RICO claim based essentially upon the same factual allegations contained in their Second State Court Counterclaim Count I and Count IV. These allegations were adjudicated in state court. Now, like the Henrys, Debtors attempt to collaterally attack the validity of the state court foreclosure judgment by filing a RICO claim in federal court based upon the same facts. Allowing Debtors now to pursue a RICO claim based upon facts underlying an enforceable state court judgment would be an impermissible collateral attack on that judgment. *Henry, Id.* at 1236–37.

Moreover, the present proceeding is the type of action that the *Henry* decision intended to prevent. In *Henry,* plaintiffs failed to raise their RICO claim or the basis of their RICO claim in the prior state court proceeding, and yet the Seventh Circuit still precluded their claim. *Id.* at 1236. Here, Debtors were given a full and fair opportunity to litigate the allegations supporting their RICO claim in a procedurally adequate forum, and attempted to do so. Declining to pursue their RICO claim,

Debtors litigated the factual basis of their RICO claim and lost. They cannot be allowed to mount a collateral attack on an otherwise valid state court judgment and the rights established therein by subsequently raising the issue in the guise of a civil RICO claim in federal court.[10] *Henry,* 808 F.2d 1228, 1235–36.

## CONCLUSION

Accordingly, Citicorp's motion for summary judgment is allowed with regard to the first seven counts of Debtors' counterclaim to Citicorp's claim.[11] Those counts will by separate order be dismissed.

However, res judicata does not yet preclude Debtor from raising the pending affirmative defense to the Citicorp claim. Therefore, Citicorp's motion for summary judgment is denied in part.

---

**10.** In *Barnett v. Stern,* 909 F.2d 973 (7th Cir. 1990), the Court of Appeals found there that a RICO claim by the bankruptcy trustee was not a "core" proceeding but was a "related" proceeding under 28 U.S.C. § 157(c)(1). *Id.* at 980–81. However, the RICO claim here is filed by the

Debtor as a counterclaim to the Bank's claims, and therefore this Court has core jurisdiction under 28 U.S.C. § 157(b)(2)(C).

**11.** Count VIII of the Counterclaim was not treated in the instant motion.